May it please the court. My name is Jeff Strohmer and I'm here representing the San Pascual Band of Mission Indians. The tribe intervened in this case, which is a case that focuses on the tribe's enrollment process and a number of issues related to that process. It is the latest chapter of an ongoing dispute relating to the enrollment of one individual, Alto Sr., in the 1990s. The district court, the tribe would argue, abused its discretion when it failed to dissolve a preliminary injunction as well as dismiss the five claims in the complaint. Let me start with the preliminary injunction. The preliminary injunction was issued before the tribe became a member of this intervene in the case. The preliminary injunction directs the Secretary of the Interior, the Assistant Secretary of the Interior, to treat the individuals that were previously disenrolled by the Assistant Secretary seven months prior to full membership and directs the Assistant Secretary to take whatever steps necessary in order to treat those individuals as full members of the tribe. The Assistant Secretary then turned around and issued an order to BIA staff directing them to deem those individuals as members of the tribe and to afford them the rights of membership. Yes, Your Honor. I understand that's one set of problems. There's also a predecessor set of problems, which is more core in some ways, which is whether this action against the Secretary, the APA action against the Secretary, let's say counts one, two, and three, or claims one, two, and three, could go forward without the tribe. And to some degree, your briefing kind of merges those two together, i.e., the injunction that was actually issued versus the determination simply on the disenrollment. So it would be helpful to me to start with the first and then go to the injunction question. And wrapped up in both of these is the Rule 19 problem, right? And how that comes to us now when it wouldn't ordinarily be appealable now. So how do we get to it? Correct, Your Honor. That's why I started with the dissolution of the preliminary injunction, because that's how we get to the other motions to dismiss. But I'm glad to start with the claims. Because what we literally have before us is the dissolution of the preliminary injunction. That's correct. And our argument is that all of the claims are so inextricably intertwined with the issues that are related to the preliminary injunction that we believe the Court should exercise its jurisdiction to issue decisions on all of the claims and not just on the dissolution of the preliminary injunction. All of the claims being? The five claims. The three first ones dealing with the if. Well, why? I mean, why couldn't we simply say something like the tribe would be an indispensable party or whatever it's now called a required party with regard to the injunction but not with regard to the question of whether the disenrollment determination of the secretariat was correct? Under the first three claims. Right. Under the Administrative Procedure Act. Right. Or not even reach that question as to the first three claims. Or reach it but just say that they're not essential to that, but they might be essential as to the second. Moreover, the injunction, or even as modified by what the secretariat did, might go beyond the claims that were adjudicated anyway. So in any event, why couldn't we split it up? Well, you could certainly split it up. We would argue that you should not split it up. I understand that. That's what I want to know. Why not? If the tribe is a necessary and required party. Let me start with claims one through three and perhaps I can start with that and then work my way into answering some of the other questions that you've raised. With respect to claims one through three, I think the critical thing to remember is that the assistant secretary acted based on a grant of authority that was given to him or her by the tribe's constitution. So he was acting under tribal law, applying tribal law, and he was effectively in the role of a neutral interpreter of the rules, if I could put it that way. The tribe's laws with respect to the enrollment of individuals in the tribe. He's acting as a membership chair, in effect. In a sense. Yeah. But he was neutral in that role. He looked at the evidence. Of course, as the assistant secretary of Indian Affairs, there are certain parameters to how he needs to evaluate tribal law. And one of the most important is that he is supposed to defer to the tribe's decision on tribal law. He did that to a certain extent. He balanced the full record and he made a decision. Claims one through three position him in a very different posture than the neutral decider that the tribal law provides under the enrollment portion of the tribe's constitution. Claims one through three require him to advocate on behalf of his decision. And in doing so, he is going to have to argue what tribal law means, because a number of those claims raise specific questions about tribal law. For example, the first claim raises the question whether or not res judicata applies. Well, res judicata, as it applies to this particular set of circumstances, is rooted in the tribe's constitution and is expressly addressed in the tribe's constitution and the enrollment rules that govern enrollment of individuals under the constitution. So the United States is going to have to argue on the basis of tribal law. Our position is that the United States cannot raise all of the arguments that the tribe can, and throughout this litigation, up until the last brief filed by the United States in this particular appeal, the United States has indicated that it is not willing to raise all of the arguments that the tribe would otherwise raise with respect to some of the issues in the case. So it is important. Well, the only issues had to do with the timing of the disenrollment, is that right? But I guess, and didn't the government change to now agree with the tribe anyway at this point? That's correct. The government did change its position on that issue, which is one of the fundamental premises that's built into the preliminary injunction. The government and the tribe agreed at one point in this litigation that the assistant secretary's decision was immediately implementable as soon as it was issued. The government has since taken several steps back from that position and now takes the position in the latest filing that it filed in this case that, in fact, the decision of the court perhaps was dicta, but yet acted during the district court proceedings as if it was not dicta because it turned around and issued a memorandum order which directed the BIA to recognize exactly the conclusion that the tribe and the government had disagreed with prior to the issuance of the rule, which severely impacts the tribe's governmental rights. So the government's changing position here has been very troubling to the tribe. The tribe can hardly have comfort to know that the government is going to represent all of its positions. My understanding is it didn't change its position. It attempted to comply with a preliminary injunction and did so only partially. It did so only partially, but in its latest briefings, it goes so far as to argue that perhaps it was only dicta. If it was only dicta at the time, it's surprising to us to learn that the government would not have raised, as we had suggested to the government at the time, that the government appeal since it was a decision that really was different than both the tribe and the government had previously agreed tribal law dictated the outcome of the decision. So claims one through three are cloaked in the APA, but they really involve the substance of tribal law rather than procedural matters. And to us, that's a very important distinction. If they were simply... Claim two is assertively a procedural due process claim, so why is... It's asserted as a due process claim, but the question really is, what kind of due process under tribal law is available for an individual who wants to contest the outcome of an enrollment decision? And under tribal law, there is a process. And the process is you participate in the enrollment committee's activities associated with reviewing the evidence, which in this case the plaintiffs did, lasted almost two years. And then you participate in the next stages, and there were two stages of appeal, both at the regional director level office as well as the assistant secretary office. The last one took almost two years to unfold. Am I right, though, that claim two isn't really before us, because that's not one of the claims that the district court relied on to issue the injunction, right? It's before us because we have asked you to exercise your authority to address her denial of our motion to dismiss all of the claims. So in that sense, it's before you. Let me just kind of cut to the chase in terms of what's bothering me about your position. I guess we've got before us the denial of your motion to dissolve the injunction. From my standpoint, I just look at the claims and I say, if even one claim is properly before the district court and supports the injunction, then you lose, right? And I focus on claim three, because it seems to me that's the most difficult claim for you to argue against, both with respect to subject matter jurisdiction and with respect to Rule 19. So two questions. Is my premise incorrect? And if it is correct, then what are your arguments with respect to claim three? I'm not sure your premise is correct, Your Honor. I think the injunction was issued based on claim number four. In fact, the injunction implements the remedy that was asked for in claim number four. But then you're switching over to the injunction as opposed to the disenrollment determination. And you need to do that. But I think Judge Rothfors is asking you, and I'm asking you, before you get there, what about simply the APA cause of action regarding the decision to uphold the disenrollment determination, which was then taken under the APA to the district court? Is there anything wrong with the preliminary relief as to just that? Well, the preliminary injunction, I don't believe, was rooted in claims one through three. I believe it was rooted in the remedy that was specifically asked for in claim number four. Now, the order itself almost tracks verbatim the specific elements of remedy that the plaintiffs asked for in claim number four. Now, it's complicated because there are links to all the claims as well that are built into claim number four. So it's not obvious. But in my view, it's claim number four that served as the basis for her to issue the injunction. Okay. But let me just say, let's say that we disagree with you on that. And the reason I would is because I would say maybe the original injunction I would agree with you. But once the Secretary came back and said I can only do X, and the district court seemed to say that's good enough, it seemed to me that the scope of that relief does correspond to what could have been issued on claim three. Am I wrong on that point? Well, I would disagree to this extent. There is no authority under the Administrative Procedure Act to issue an injunction. So if, in fact, you're correct, then there's a fundamental defect in the injunction, which is that there's no law that authorizes the issuance of an injunction under the Administrative Procedure Act. And the United States agreed to that point and made that point in oral argument. Okay. But hold on. Let's say that the district court has claim three. The argument is that the Assistant Secretary's decision is arbitrary and capricious. And the district court says, yeah, you know, I think, Plaintiff, you're going to prevail on that. You're likely to prevail on that. I want to preserve the status quo going forward, which is that they are still members. What else is the district court supposed to do other than issue an injunction that corresponds at least to the scaled-back relief that we now have in place? To preserve the status quo, right? Well, if the district court wants to preserve the status quo, the preliminary injunction obviously does that. We think that it's an inappropriate insertion into the tribe's ability to govern its affairs. The tribe is not part of this lawsuit. It is a party outside of the lawsuit. And essentially, the United States here is used as a Trojan horse, put it in one way to frame it, to go out and implement what the plaintiffs want implemented against the tribe, because the tribe is not part of the lawsuit. And we think that's improper. But the problem is the tribe has interjected the Assistant Secretary in his official capacity into this process. I mean, believe me, I don't think any of us would like to be here. It does seem to be something that the tribe should handle on its own. But the tribe has made the decision to bring the Assistant Secretary into play. And at that point, it seems to me federal law is going to govern the Assistant Secretary's actions. I mean, at least to some extent. Under the APA, perhaps, you know, he'd be constrained by the Constitution as well. I don't see what choice we have now other than to apply federal law to assess the validity of the Secretary's actions. Well, I think the choice is the same choice that the Kaler and Atalanta courts faced, which, and in that case, the United States argued that the tribe had to be at the table because it was a necessary and required party in those cases, and they convinced Judge Jones that that was the case, and he dismissed the case. I thought the difference was that there was no final determination by the Secretary. And to us, that makes no difference. Why? Because the Secretary was acting based on tribal law the entire time the Secretary was involved in this decision-making process. But there couldn't have been an APA action without a final determination by the Secretary. In the other cases, there couldn't have been one. Well, the other cases were dismissed in great part because of Rule 19, and we haven't gotten to that part. Well, I think all you're talking about is Rule 19 in the end, right? I mean, it's Rule 19 or nothing as far as your role here is concerned because, for one thing, you're appealing a motion to dissolve an injunction when you're not even in the case, so presumably the only way you've got to make that motion is on the assumption that you're going to be allowed in on a Rule 19 basis. In fact, I don't even understand that because then your ultimate position is you can't be allowed in because of sovereign immunity. So essentially, the only way that your current motion makes sense is by you're saying not even having to get to the merits of anything. I mean, it would appear to be you're saying we should have been in the case. We're not in the case. And if you ask us to come in the case, we're not going to come in the case, so you can't have a case. So therefore, no injunction. I mean, that has to be what you're saying or else you have no role here. Well, case law is clear that tribes are sovereigns and they have the right to intervene for the limited purpose of raising their sovereignty. Just before we get to that, I'm trying to get a handle on what we have before us. Do we have anything, literally speaking, do we have anything but that before us? Because if that's not your position, you have no role here. That being what? I'm sorry. That being ultimately the case should be dismissed because we are required parties and we are not going to appear because of our sovereign immunity. Ultimately, that's correct. Now, two things about that. First of all, ultimately, is Rule 19 usually interlocutorally appealable? It is not. It is not. That's correct, Your Honor. So why is it not here? Because it is part and parcel of our motion to dissolve the preliminary injunction, which is appealable. And did you raise the Rule 19 argument as a ground to dissolve the injunction? Yes, we did, Your Honor. Okay. I mean, I reviewed it last night and I didn't see a separate, you know, well-developed argument on Rule 19 specifically. Is there something in particular you could point me to in your motion to dissolve? I can do that, Your Honor. Maybe on, maybe come back up. I can do that, Your Honor. Can I, sorry if I'm jumping in, Judge Perzo, but can I just direct you back to Claim 3? And what's your argument under Rule 19 as to why the federal government can't adequately represent the tribe's interest there? Well, Claim 3 raises a number of questions about the evidence, raises a number of new arguments that were not made previously, raises a number of new pieces of evidence that were not reviewed by the Assistant Secretary. And our position is that the evaluation of all those questions are directly tied to tribal law. Whether or not a piece of evidence was appropriate to introduce in the case was a matter that was litigated, and all of the other pieces of evidence that are part of the case with the tribe involved under tribal law. And essentially what the plaintiffs are attempting to do here is have a separate litigation directly between the tribe and the United States, I'm sorry, between the plaintiffs and the United States that does not involve the tribe, in which all of these issues are going to be reopened and reexamined. And we think that's inappropriate. These are matters of tribal law, and the tribe must be at the table when those matters are reopened and relitigated. But what, I mean, doesn't the Assistant Secretary have the same incentive to defend and have, defend his decision under the APA standard as the tribe would? I just don't see where there's a disconnect between what the tribe's interests are and the Assistant Secretary's. One would think that the United States would have the same interest, but I'm not sure that the United States does have the same interest. And in our briefs we've outlined a number of reasons why we think the United States does not. First of all, in the underlying decision itself, the United States did not agree with a couple of critical issues that were proffered by the tribe and the tribe's interpretation of tribal law. So the decision itself reflects a tension between the United States accepting the tribe's version of what the tribe's law should say, and the outcome doesn't reflect an acceptance of that. But the tribe put the United States Secretary in that position, allowing it to do that. In other words, within that circle, they certainly didn't act improperly because they were given the authority by the tribe to determine tribal issues, including tribal law. I mean, at some point you seem to be arguing that only the tribe gets to decide this issue, but obviously that isn't true. There was an appellate authority given to the Secretary. If that's your understanding of my argument, I apologize. That's not what I'm arguing. The tribe is not arguing that what the United States, the role that the United States carried out in the enrollment process, in other words, the neutral arbiter role that I described earlier, was carried out improperly. There were disagreements. So it can't be that the fact that they disagreed with the tribe in some respects says there was a conflict because they were given the authority by the tribe to disagree with the tribe in some respects. Sure, but that doesn't eliminate the conflict. If the Assistant Secretary ultimately does not decide to apply the law, that the tribe believes should be applied to the case, there still can be a conflict. But this is a different situation. What the plaintiffs are proposing here doesn't involve the tribe at all, looking at a whole host of issues that have implications in terms of how the tribe's law works and whether or not a piece of evidence should come in, how it should be evaluated. It would be a separate problem when you get to the merits that says you can't go beyond the record that was before the tribe and before the Secretary. That would make sense. But that's a merits problem. Right? I would agree to that. But it's not a reason why there's something fundamentally wrong with this procedure going forward without the tribe. It just says that it just circumscribes that this is an administrative proceeding and essentially as an un-administrative proceeding you can't add to the record. Well, at the merits level perhaps, but we don't even think it's appropriate for those merits to be addressed by the court. That's right. But I'm simply pointing out that that point really has to do with the merits. It's really a merits point. Okay. You're well over time. We will give you a couple minutes in rebuttal. It's a complicated case. Thank you very much. It was a very useful argument. Good morning, Your Honors. This is Court Thore Emblem for the appellees, the Alto family. We kind of had the same trouble I think the court did with reading the appellant's brief to figure out exactly what the arguments were. So I thought I would address it along the lines of what we propose that the court should do with this case, and at this stage we believe the court should dismiss it. Under 12b-1, I don't think there's a justiciable issue before the court. What? Well, the 19b actions are not justiciable before the court. The cause of action 4 and 5 have been stayed below, so they're not before the court. Well, two things about that. First of all, you mean dismiss the appeal. It has nothing to do with 12b-1. Is that what you're saying? I'm really confused about what you're saying. You don't want the case dismissed. You brought the case. We're not talking about the case below. We're talking about the case here at the Ninth Circuit. Rule 19 is true, is ordinarily not appealable interlocutorily. But if you have a preliminary injunction that's been issued, if the preliminary injunction is issued without the participation of a party that is either required and as to which their necessity was not determined, how could you go forward without determining the Rule 19 issue when presumably there are rights being affected in the interim that couldn't have been adjudicated hypothetically, now I'm saying, without the participation of a party that can't be joined? I mean, you're suggesting that we could affirm the preliminary injunction or even the administrative determination on the APA claim, even if it were ultimately the case that this case would have to be dismissed because of the absence of a required party. Is that your point? Is that what you're saying? The case, the Court of Appeals could dismiss the appeal. Well, the net result would be that there would be an injunction in place for some period of time where there is a party that should have been present but couldn't be present and the injunction nonetheless remains in place and people's rights are nonetheless affected in the meanwhile. Is that your position? Under USC 5, Section 705, Relief Pending Review, preserve the status quo. The district court had the absolute authority to do what the district court could do to preserve the status quo. In issuing the preliminary injunction, Judge Gonzales is attempting to preserve the status quo because my clients are still members of the tribe, are still on the official roles. But Judge Gonzales did make a Rule 19 determination with regard to Claims 1, 2, 3, did she not? She didn't on 4 and 5, but she did with 1, 2, 3? Yes. I'm sorry? She did make a determination on Rule 19 concerning 1, 2, and 3. She denied their motion on that. But I believe that the question was about preserving the status quo and whether the preliminary injunction could be dismissed. Now, what's happened in the course of this case, the counsel argued a case which was not published. It was in the district court and it did not involve APA, so I believe the court correctly recognized that that was not a good argument for the appellant. Preserving the status quo for the benefit of the plaintiffs below is not new to this tribe because in October of 2009, the Assistant Secretary wrote to the tribe and the tribe's attorney, the person sitting here, advised them that as long as the appeals are continuing, that my clients, the Altos, are to be treated as tribal members and that they'll have a right to vote and they'll have a right to their per capita from the casino. The Assistant Secretary, Mr. Larry Echo-Hawk, was very clear about that in the letter and the tribe then continued to treat the Altos, my clients, as members of the tribe. Let me ask you a question. The Assistant Secretary has authority because the tribe has given it the authority to do essentially appellate review on the disenrollment question. That's correct. But does the Assistant Secretary have authority to say who gets Indian benefits or does he have any coercive authority? I mean, how does that work? Yes. The Bureau of Indian Affairs has the authority over Indian benefits in many respects, the ability to get preferable loans to buy a house or auto loans or education or Indian health care. All of that is regulated under the Bureau of Indian Affairs. So the Bureau of Indian Affairs could just choose to give it to these people because they're now ordered to be at least temporarily enrolled. But how does the tribe fit into that? Do they have to order the tribe to do anything or do they just do it? The BIA advises the tribe in an advisory role. I thought you just represented, and this is an area I do not know, that the Secretary of the Interior gives the health benefits. That's not true. How do Indian health benefits work? Well, locally in the case of this particular tribe, the Indian health benefits are created by a local clinic, which is funded by local tribes. So it's not the BIA that's giving it. Well, the BIA has some role in that, but I can't. It wasn't before me today, so I'm not able to explain exactly how that works. But nonetheless, the Assistant Secretary told the tribe in 2009, you should do this, advisory. If we don't do that, then we can't do business with you on the government-to-government relationship. So when the BIA in this case issued the advisory opinion subsequent to the district court's preliminary injunction, they did two things. They advised the district court that we can't do exactly everything that the district court would like us to do in terms of preserving the status quo, but this is what we can do under the laws and under the authority that's specifically granted to the BIA through the tribe's own constitution. And that's what they did. So to dissolve the preliminary injunction doesn't do a protected status quo. You did not tell me at the outset how you're dividing time with the government. Is the government arguing? I'm sorry, I missed that. You did not tell us at the outset how you're dividing time with the government. Is the government arguing? Well, the government's argument. Are they arguing here today? Yes. When? How much time at the time are they taking? I'm sorry, 15 minutes? No, you have 15 minutes total. Oh, we're going to reserve seven first. All right, it's under seven now, so if you want to give up your time. All right, thank you. Thank you very much. In fact, if there were no questions, I would turn it over at this point. May it please the Court, John Smeltzer here for the Department of the Interior and the Bureau of Indian Affairs. Your Honors, when I'm before this Court representing federal agencies on appeal, I'm not accustomed to sharing time at the podium with plaintiff's counsel, so I want to make it clear from the outset the federal defendants are not here to validate the plaintiff's suit or to defend the preliminary injunction on the merits. We're here solely to acknowledge the district court's jurisdiction, to review the agency action at issue here, and to defend the district court's application of Rule 19. With respect to subject matter jurisdiction, we submit that there is federal jurisdiction, subject matter jurisdiction under Section 1331 because the assistant secretary here acted under the authority of his office, not Judge Carr as the chair of the membership committee, but in his official status. And because of that, the- He may have been in his official status, but he wasn't applying federal law, was he? Well, Your Honor, the position we have taken is, yes, he was applying the tribal enrollment criteria, which was initially set out in the 1960 regulations and then were adopted by the ban through its constitution. So he was, as terms of the substance- You're relying on the nonexistent regulations? That's the federal law? They're not nonexistent, Your Honor. They're incorporated within the ban's constitution. But they're nonexistent as federal law. They're no longer in CFR. They're no longer self-executing as federal law. But, of course, the ban's constitution was approved by the secretary. And it is a role that the ban specifically assigned to the secretary. And when the ban did so, when the ban adopted its constitution, these were extant federal regulations. And so what we would say is that the secretary did decide when he was presented with the recommendation from the Enrollment Committee to take this action. The secretary determined he had jurisdiction because that was a role that was assigned to him. He may have had jurisdiction, but that's a separate question. I mean, he may have had authority because he was given authority. And I suppose the secretary of labor can decide to mediate a labor dispute, too, because people ask him to. But I don't see how that leads to there being an APA question under federal law or 1331 jurisdiction. Our position is that he was operating as a federal officer, according to his authority to execute United States sovereign-to-sovereign relations with tribes. Is there any case you can think of under 1331 that would say that that arises under federal law? That because you have somebody operating under, and moreover, why is it a state and APA cause of action? Your Honor, the case we cited … I have two questions. Why is it 1331 jurisdiction, and why is it under the APA? Well, it's under the APA because it's a challenge to federal agency action, and that's the suit they brought. There's federal question jurisdiction because the law of this court is, and I'll quote from the Gallo Cattle case, that federal courts have jurisdiction pursuant to 28 U.S.C. section 1331 over challenges to federal agency actions as claims arising under federal law, unless a statute expressly precludes review. There is no statute precluding review here. There are statutes that are authorizing the secretary to act on behalf of the United States with respect to Indian affairs to carry out this kind of role. The secretary accepted this role in approving the Constitution, and there is no question in this case that the secretary's decision is final and has meaning under federal law with respect to Indian benefits, and certainly under tribal law with respect to enrollment in the band. So it's final agency action that impacts the tribe and the people. Are the Indian benefits under federal law? The Indian health service is, I think, contracted out under federal law. We didn't brief this in the case, but it's certainly the federal benefits, federal funding, and those are some of the benefits that are provided under federal law. That specific issue of the relationships was not briefed, Your Honor. So that's what we'd say with respect to subject matter jurisdiction. Because of the acting as part of his federal office, that gives the subject matter jurisdiction. With respect to rule. Your Honor, before you move on, I thought for there to be jurisdiction under the APA that there had to be some kind of standard prescribed by federal law that a federal court could then measure the federal official's behavior against. Well, there are two issues. The one is there is a federal question, a question of federal law, and then there's a separate question of is the standard that has to be applied significantly clear or is there a standard that can be applied that doesn't make the decision too discretionary to allow it to be reviewed, which is a separate provision of the APA. We address that in a footnote in our brief. We believe the standard of law. What I'm asking you, though, is that I thought the standard had to be supplied by federal law in order for there to be federal question jurisdiction. Ultimately, the standard is supplied by the federal approval of this role, the approval of the Constitution and having this procedure be approved by the Secretary in this relationship. Which standard are you referring to? The standard that's in the tribal law now that was in the Code of Federal Regulations. But that's tribal law. That's not federal law. Well, Your Honor, it was federal regulation when the tribe adopted its Constitution. I'm really having a hard time understanding. Let's suppose it wasn't. Suppose it wasn't, but they had asked the Secretary to be the appellate body. Would you be taking a different position? I don't think the Secretary would have participated. I mean, the Secretary might have some advisory role, but the ban, the tribe didn't come to the Secretary in an advisory role. The ban came to the Secretary because the Secretary has an obligation pursuant to the tribe's Constitution that says the membership shall be determined pursuant to these federal regulations, the Part 48 regulations. And when the Secretary approved the Constitution, of course, those were existing regulations. The Secretary did go through a couple other iterations of the regulations and then ultimately withdrew the regulations. But that was a decision that the Secretary made. You know, it doesn't change ultimately what the tribe was asking the Secretary to do. But it changes the fact of whether there's federal law or not federal law entirely. And how could it not? To supply the substantive standard, not to supply the authority to act and to act in accordance with the regulations. Well, the assumption would have to be that it never mattered whether there were federal regulations. If the tribe had given the Secretary this kind of authority in the Constitution and the Secretary had accepted it, and that was a definitive role for the Secretary, yes, I guess our position would be the same. But ultimately, with respect to Rule 19, if I could speak on Rule 19 for a couple minutes, what the Secretary did here was perfectly, well, judicial review is in accordance with the ban's Constitution. Because what the ban's Constitution did was to give a particular decision to a federal official, subject to the limitations of the federal office. And again, what I said, when the ban did that, of course, the regulations were still extant, and there could have been no expectation then that there wouldn't have been APA review. And what APA review does is when a judge reviews the Secretary's action, what the judge, the district court will do, will determine whether the Secretary faithfully executed his role as set out in the ban's Constitution through the incorporated federal regulations. The judicial rule doesn't take the decision from the Secretary. Let's move on a step. What is your position as to the current reviewability in this proceeding of the Rule 19 determination, A, with respect to Claims 1-3, and, well, with respect to Claims 1-3? There's been none. The one that was made with respect to Claims 1-3 was preliminary in the sense of preliminary injunction, but do we get to review it at least to that degree? If you're talking about appellate jurisdiction, are you talking about just the Rule 19 issue? I'm talking about whether there's appellate jurisdiction here and now with regard to the Rule 19 issue and to what degree. We believe there's appellate jurisdiction because there was an injunction issued. As to the Rule 19 issue? Well, there was an injunction issued as to the underlying merits of the case. I understand. My understanding, again, is that all we have before us, as I said before, is a motion to dissolve the injunction by the tribe. They're the only people appealing and that's what they're appealing, right? That's right. And their motion was a motion to dissolve the injunction and dismiss the case because we are required parties and we're not coming and waiving our sovereign immunity and, therefore, the case just can't happen. So, ultimately, isn't that the only thing that's before us? That's where I started. I think the subject matter jurisdiction that we've been having this dialogue about is kind of wrapped up because the court can always determine whether the subject matter jurisdiction and it's tied into the Rule 19 issues. But, ultimately, yes, the Rule 19 issues are the only issues before the court. As I said at the outset, we're not here defending the merits of the injunction. All we're saying is that the district court had authority to review Counts 1 through 3 and then to issue a preliminary injunction pursuant to the APA. But you're not questioning whether we have the authority now to review the Rule 19 determination to the extent you made it? No, because under 12 That ordinarily would not be appealable to the end of the case. It's subject to this court's jurisdiction because of the 1292A1 jurisdiction over injunctions and this was ultimately an order refusing to dissolve an injunction. Which was really premised on Rule 19 and nothing else. Really. Isn't that right? Well, the injunction was issued because the court Not the injunction, the motion to dissolve it. The motion to dissolve was predicated on the tribes needing to be here as an indispensable required party, which is the Rule 19 issue. That's right. Exactly. Okay. Now, with regard to the injunction that was issued and Judge Watford was asking this before, is it your position or you have no position as to whether the injunction either as issued or as modified by the jury to which you conform to it was proper based on claims 1 to 3 or does it involve claims 4 to 5 and does that matter? We think it was the type of relief that is properly granted in a preliminary injunction for claims 1, 2, 3. It's a little bit complicated because in claim 4, the plaintiff styled that claim and part of the relief they sought in claim 4 was a preliminary injunction, which has caused some of the confusion. But they also sought in that claim 4 injunctions that would have compelled federal officials to order the ban to do things. And that is where we have drawn the line. We have said the APA doesn't give the court jurisdiction to issue that kind of an injunction. What the APA would provide the court is the authority to effectively set aside and vacate a final disenrollment order, make the assistant secretary do it again. And if that kind of relief is granted and the secretary makes another final order with respect to disenrollment action, that's the potential thing that could provide them relief. Again, setting aside the subject matter jurisdiction, how does, or put it another way, what findings were made with regard to likelihood of success even with regard to the aspects of the injunction that went to EGRA and Indian Health and benefits and a whole bunch of other things? In other words, I could understand an injunction that says don't enforce the disenrollment or vacate your disenrollment determination, you know, for the interim. But what about the rest of it? Just on ordinary preliminary injunction grounds, how is it justified? I think what the district court said was there were substantial questions with respect to claims 1 and 3. Okay. The district court specifically reserved whether or even had jurisdiction over the further types of injunctive relief that were sought in claims 4 and 5. The district court ultimately did not base its final injunction. The district court clarified and said, look, the injunctive relief I've provided is to preserve the status quo because I've found substantial questions with respect to claims 1 and 3. Now, you put me in an awkward spot because the government doesn't necessarily agree there are substantial questions on the merits of claims 1 and 3. We're here just to say with respect to jurisdiction, if there were substantial questions, that it's the type of case where Rule 19 does not dictate dismissal because what the judicial review is doing is simply to ensure that the secretary, the assistant secretary, excuse me, did his job pursuant to the authority that's delegated in the ban's constitution. But that's true with regard to what was delegated to it. But nothing else was delegated. There was no delegation with regard to, in this constitution, with regard to the thing that's being reviewed now, with regard to EGRA, with regard to benefits, with regard to anything else. We absolutely agree that there's no jurisdiction over those things, but the district court didn't say there was, so we just noted in our brief that that's not before this court. But there's an injunction that deals with it, even to the degree that you softened it. Well, what the injunction. You still told them essentially you better do this or else. Well, what the preliminary injunction did, we believe, Your Honor, is to tell the assistant secretary that for purposes of his official office, he cannot rely on this disenrollment order pending final decision in this case. So it essentially preliminarily sets aside the disenrollment order. Once the disenrollment order is preliminarily set aside, the secretary has other duties vis-a-vis this tribe and the delivery of services other federal officers do. All the secretary did in his memorandum of order to conform to what he thought was the lawful aspect of the district court's preliminary injunction was to advise these other officials, advise other federal officers that until this case is finished and until we can get final resolution on my order saying that these people are disenrolled, that I have to, by court order, accept these people as continuing to be in this band, and that is the federal position until we get final resolution in the lawsuit. Okay. Can I ask one last question? Yes. Do you read the court's denial or rejection of the plaintiff's objections to the scaled-back relief that's been granted as, in effect, a modification of the original injunction? Absolutely, Your Honor, and that's because this court's jurisdiction comes from the fact that there's somebody under a restraint, under an injunction. So the jurisdiction is only to the effect that they're under a restraint. The plaintiff's asked for that further relief. Look, you initially ordered us, the BIA, to order the band to do stuff. We want you to do that again. The district court said, No, I'm not going to do that. So that order is not pending. So it can't be a basis for jurisdiction under 1292A1. Okay. Thank you very much. Thank you. Sir, I'll give you, say, you went over, let's say, five minutes. Thank you, Your Honor. I just have a few points. First of all, you asked me for the portions of our brief where we argue the application of Rule 19 to the issuance of the preliminary injunction. There are two. In the main brief, pages 18 through 28 address the issue, and I think in the reply brief, pages 11 through 14 address it even more specifically. Of which briefs now? So our opening brief. On the motion to dissolve? Our appeal brief. No, no, no. I'm saying below. I'm sorry. I meant, I was looking at your brief. The motion you filed in the district court to dissolve the injunction, I was asking whether you had raised the Rule 19 argument as a basis for dissolving the injunction. I was struggling to find that. You certainly argued it on appeal. I am not disputing that at all. Okay. I apologize, Your Honor. I'll have to go back and look. I think that we raised it, but I'll have to go back and look, and I can supplement. Yeah. It's not that significant. I have the brief, and I can look at it again. Okay. Thank you, Your Honor. I would just like to make a few points in response to some of the questions and answers with the plaintiffs in the United States. First of all, with the last point that was just discussed with respect to the scope of the Assistant Secretary's order, I think to be precise, what the order did and does still today is direct officials from the Bureau of Indian Affairs to deem these individuals as members of the tribe and to ensure that the tribe provides them with all rights and benefits associated with membership. And there are different categories of rights and benefits associated with membership. There are some that the Bureau has control over. There are some that the Indian Health Service, which is an entirely different agency within the Department of Health and Human Services, has control over. So the health services that you ask about, Your Honor, really are provided by the Indian Health Service. And then there are a set of benefits that are really only available under tribal law. And there are, for example, voting benefits, attending general council meetings, which are specifically identified in the memorandum order as benefits that the Assistant Secretary expects his delegees on the ground to ensure are available. Participate in elections. Attend general council meetings. The other one that's a fairly large and significant benefit is receive per capita payments. Pay out of the tribe's resources. Now, does the BIA ordinarily have any authority over those things, over the voting, over the per capita, over so on? No, the tribe's constitution. On the voting, each one has a separate kind of set of authorities, if I can frame it that way. On the voting and participating in the general council meetings, that's up to the tribe, tribal constitution. The BIA has no role in defining any of those aspects. So that's a matter purely of tribal law. On the per capita payments, there's an ordinance that's enacted that the BIA does have authority to approve, and the ordinance spells out how the tribe is going to distribute per capita payments. And the ordinance specifies that per capita can only be paid out to tribal members. I mean, these are significant resources that are the product of the tribe's gaming enterprise that are paid out in the form of cash. So that's an aspect. They do have some element of involvement with respect to the resolution, but it's the National Indian Gaming Commission, an entirely separate agency from the Bureau of Indian Affairs, that actually has enforcement authority with respect to the resolution. So the BIA approves them, and then the NIGC has enforcement authority. So it's a complicated landscape, but what's clear from the memorandum order is the directive to bureau employees that these individuals are to receive all of the benefits, not just those that the bureau has control over, those under tribal law as well, and that they are to work with other agencies to ensure that that happens. Isn't that the natural consequence of the decision to reverse the disenrollment? I mean, because if they were enrolled, they got disenrolled, and then that got reversed. Am I correct on that? Well, it hasn't been reversed. It's just trying to maintain the status quo. So yes, to maintain the status quo, all of those elements are part of the benefits and rights that enrolled tribal members receive. But some of those, the bureau has no jurisdiction over at all. They're purely a matter of tribal law. But it isn't really a question of whether this would be an appropriate order or it wouldn't be an appropriate order. The question is whether it's an appropriate order without the tribe's presence. That's correct. That's correct, Your Honor. All right. Your time's about up. Thank you, Your Honor. First of all, thank you for your arguments in a complicated and difficult case. The case of Alto v. Salazar is submitted.
judges: Carr, Berzon, Watford